MICHAEL A BORG, ESQ.
Attorney for the Plaintiff
48 Wall Street, 26th Floor
New York, NY 10005
(212) 268-7222



FEB 1 1 2008
U.S.D.C.
CASHIERS

UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

VICTOR K. SOFFER,

    Plaintiff,

    v.

VALENTI MOTORS, INC.

    Defendant.

-------------------------------------------------------x

JUDGE STEIN

08 CV 1456

Civil Action No.

**COMPLAINT FOR MONEY DAMAGES
AND DECLARATORY RELIEF.**

Plaintiff, appearing herein by MICHAEL A. BORG, Esq., complaining of the defendant, respectfully sets forth and alleges as follows:

**FIRST CLAIM FOR RELIEF**

1.    This action arises under a federal statute, 15 U.S.C. § 1640.

2.    Plaintiff is a natural person and a consumer, who resides at 345 8th Avenue, Apt. #20B, New York, NY (hereinafter "plaintiff's residence").

3.    Defendant is a motor vehicle dealer and creditor.

4.    On February 4, 2008, plaintiff placed an order with the defendant for the purchase of a 2001 Audi S4 (hereinafter "pre-owned vehicle") for the agreed price of $16,995.00,

1

plus taxes and fees, and less the sum of $3,042.59, as the net trade-in value of plaintiff's 2000 Audi A4 (hereinafter "trade-in vehicle").

5. On February 4, 2008, plaintiff gave the defendant a deposit payment in the sum of $500.00.

6. Plaintiff requested that the defendant arrange for financing of the balance of the purchase price of the new vehicle.

7. On February 6, 2008, the parties executed a "RETAIL INSTALMENT CONTRACT" and a "LEASE/RETAIL PURCHASE ORDER FOR MOTOR VEHICLE" (hereinafter "sale documents"), neither of which gave the plaintiff credit for the $500.00 down payment.

8. As a result of the foregoing, the sales documents misstate the "amount financed" in violation of the provisions of 15 U.S.C. § 1601 et. seq., and the regulations promulgated pursuant thereto.

9. As a result of the foregoing plaintiff has sustained actual damages of $500.00.

## SECOND CLAIM FOR RELIEF

10. This action arises under a federal statute, 15 U.S.C. § 1640.

11. A creditor is permitted to provide additional accurate information along with the mandatory Truth in Lending Act disclosures in the "RETAIL INSTALMENT CONTRACT".

12. The "RETAIL INSTALMENT CONTRACT" executed by the parties on February 6, 2008, contains a clause entitled "Arbitration".

13. The "Arbitration" clause contains the following language:

"(e) Even if you or we start a claim or a dispute in court, the other can have the claim removed to arbitration."

2

14. The foregoing language in the arbitration clause is inaccurate and misleading and may improperly convince consumers that they have no right to challenge the validity of the "RETAIL INSTALMENT CONTRACT" in a court proceeding.

15. The language quoted in paragraph 13, above, is only accurate once there has been a determination or a concession that the "RETAIL INSTALMENT CONTRACT" itself is a valid and binding agreement.

16. The language set forth in paragraph 13, above, violates the provisions of the Truth in Lending Act.

### THIRD CLAIM FOR RELIEF

17. The Court has supplemental jurisdiction of this related claim under 28 U.S.C. § 1367.

18. The defendant is a large new and used motor vehicle dealer which sells, *inter alia*, new and used vehicles manufactured by Audi, Airstream, Isuzu, Jaguar, Lotus, Pontiac, Saab and Volkswagen.

19. The defendant's complex at 600 Straits Turnpike, Watertown, CT, consists of multiple sales, storage and service buildings and multiple sales/storage lots covering many acres (hereinafter "defendant's complex").

20. The defendant's complex includes, *inter alia*, an authorized Audi dealership.

21. That on February 4, 2008, before placing the order for the pre-owned vehicle, plaintiff took the pre-owned vehicle for a test drive from the defendant's complex while accompanied by the defendant's salesman.

22. That during the test drive plaintiff sensed an unusual vibration in the purchased

3

vehicle.

23. That plaintiff expressed concern about the vibration to the defendant's salesman who claimed not to notice the vibration.

24. That upon return to the showroom, the defendant's sales manager advised that there was nothing wrong with the pre-owned vehicle and that it was the rough road surface which caused the vibration.

25. Plaintiff took a second test drive, again accompanied by the defendant's salesman, during which the effects of the rough road were noted and during which the unusual vibration did not appear.

26. Upon return to the showroom plaintiff was advised by the defendant's salesman that the defendant's service department had performed a "120 point inspection" on the purchased vehicle and would not permit a defective vehicle to be sold.

27. Defendant's sales manager then requested that plaintiff lower the amount of his demand for the trade-in vehicle, as the trade-in vehicle had been in an accident, which, although it involved only cosmetic damage, rendered the trade-in vehicle unfit for retention and sale by the defendant.

28. Defendant's sales manager advised that the trade-in vehicle would have to be auctioned off, which meant the value of the trade-in vehicle was much less than if the defendant could retain and sell it.

29. Defendant's salesman then confirmed that even an accident resulting in mere cosmetic damage rendered the trade-in vehicle unfit for direct resale by the defendant.

30. The statements of the defendant's salesman and defendant's sales manager regarding the condition of the pre-owned vehicle were untrue.

4

31.  The false and misleading statements of the defendant's salesman and defendant's sales manager regarding the condition of the pre-owned vehicle were intended to induce the plaintiff into purchasing the pre-owned vehicle.

32.  Plaintiff relied upon the false and misleading statements of the defendant's salesman and defendant's sales manager regarding the condition of the pre-owned vehicle, to his detriment.

33.  The statements of the defendant's salesman and defendant's sales manager regarding the defendant's standards, practices and procedures for the retention and sale of pre-owned vehicles were untrue.

34.  The false and misleading statements of the defendant's salesman and defendant's sales manager regarding the standards, practices and procedures for the retention and sale of the pre-owned vehicle were intended to induce the plaintiff into purchasing the pre-owned vehicle.

35.  Plaintiff relied upon the false and misleading statements of the defendant's salesman and defendant's sales manager regarding the defendant's standards, practices and procedures for the retention and sale of pre-owned vehicles, to his detriment.

36.  On February 6, 2008, the plaintiff delivered the trade-in vehicle to the defendant's complex.

37.  On February 6, 2008, the plaintiff took delivery of the pre-owned vehicle from the defendant's complex.

38.  During the drive from the defendant's complex to the plaintiff's residence, a distance of approximately 90 miles, the pre-owned vehicle exhibited intermittent

episodes of violent shuddering, vibration and thumping which shook the entire vehicle.

39.  These effects were precipitated by and/or heightened when the vehicle was turned to the left or right during highway driving.

40.  In addition, plaintiff noticed that although the FM radio band worked, the AM radio band did not receive any reception.

41.  Plaintiff drove the vehicle directly to an experienced automobile mechanic for inspection and diagnosis.

42.  Plaintiff described to the mechanic the circumstances of the test drives as well as the effects experienced on the drive from the defendant's complex.

43.  Plaintiff was immediately advised by the mechanic that the intermittent vibration, shuddering and thumping might be caused by a defective axle or axles, but that inspection and diagnosis would be required to confirm the nature of the problem.

44.  Plaintiff left the pre-owned vehicle with the mechanic for inspection and diagnosis of the vibration, shuddering and thumping, as well as the AM radio problem.

45.  Subsequently, plaintiff was advised by the mechanic that the vibration, shuddering and thumping problem was, indeed, caused by defective front axles and one defective front wheel bearing.

46.  The mechanic also advised that the keyless remote alarm system did not work, and had to be activated by using the key.

47.  The mechanic also advised that the alarm system, when activated, malfunctioned, as the alarm repeatedly went off while the vehicle was sitting undisturbed, requiring him to turn off the alarm and reset it each time.

48.  The mechanic advised that the alarm system malfunction appeared to be related

to the problem with the AM radio band, but that additional diagnosis and testing would be required to locate the problem and determine what corrective measures would be required.

49.    The mechanic also advised that nearly the entire surface of the pre-owned vehicle showed evidence of re-painting, which indicates, at the least, that the car has sustained severe cosmetic damage of some sort.

50.    The false statements and omissions of the defendant's representatives as to the condition of the pre-owned vehicle and as to the purported standards, practices and procedures of the defendant regarding the sale of such a vehicle were a willful artifice and deception intended to through the plaintiff off his guard and lull him into a false sense of security regarding the condition of the pre-owned vehicle.

51.    Plaintiff relied upon the defendant's false statements and was deceived by the defendant's omissions, to his detriment.

52.    Plaintiff has sustained actual damages of $6,542.59 as the result of the surrender of the trade-in vehicle to the defendant.

53.    Upon information and belief the defendant intends to assign the "RETAIL INSTALMENT CONTRACT" to a finance company who will then seek payment of the financed amount from the plaintiff.

54.    Throughout the years plaintiff has striven to maintain an excellent credit profile and history.

55.    Plaintiff does not wish to jeopardize his excellent credit standing while this proceeding is pending.

56.    Plaintiff may, therefore, be obliged to make monthly instalment payments to the

finance company during the pendency of this proceeding, so as to protect his credit standing and profile.

57.   Accordingly, plaintiff will continue to sustain monetary damages during the pendency of this proceeding, consisting of any finance payments made pursuant to the "RETAIL INSTALMENT CONTRACT".

58.   Plaintiff anticipates that he will be obliged to incur storage costs, in an as yet unknown amount, for the pre-owned vehicle during the pendency of this action.

WHEREFORE, plaintiff demands the following relief:

(a)   As to the First and Second Claims for Relief, actual damages in the sum of $500.00, together with interest from February 4, 2008, along with statutory damages in the sum of $5,207.56, together with the interest costs and disbursements of this proceeding, together with a reasonable attorney's fee;

(b)   As to the Third Claim for Relief judgment

I.   declaring that the "RETAIL INSTALMENT CONTRACT" and "LEASE/RETAIL PURCHASE ORDER FOR MOTOR VEHICLE" entered into by the parties are void and restoring the plaintiff to his original condition by directing the defendant to retake possession of the pre-owned vehicle and to return the trade-in vehicle to the plaintiff in substantially the same condition as at the time it was delivered to the defendant, or,

ii.   in the event the trade-in vehicle is no longer available for return, directing the defendant to retake possession of the pre-owned vehicle and awarding plaintiff damages in the sum of $6,542.59, together with interest from February 6, 2008,

and,

    iii.    awarding plaintiff an additional amount equal to the total of finance installment payments made by the plaintiff up to such time as this proceeding is finally determined, together with interest thereon, and,

    iv.    awarding plaintiff the amount of any costs incurred to store the pre-owned vehicle during the pendency of this action together with interest thereon,

    v.    awarding the plaintiff punitive damages in an amount to be determined, and,

    vi.    awarding such other and further relief as the court deems just and proper along with the costs and disbursements of this action.

Dated:    New York, New York
           February 11, 2008

_____
MICHAEL A. BORG, ESQ. (MB-4764)